**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| LORELEI HUDSON, | DOCKET NUMBER |
| Appellant, | AT-0752-21-0485-I-2 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: February 21, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Daniel K. Gebhardt, Esquire, Washington, D.C., for the appellant.

Dana C. Heck, Esquire, St. Petersburg, Florida, for the agency.

Torrey Smith, Esquire, Decatur, Georgia, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed her demotion. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We AFFIRM the initial decision IN PART, AS MODIFIED by this Final Order, REVERSE it IN PART, and VACATE it IN PART. More specifically, in her analysis of the appellant's whistleblower reprisal affirmative defense, we REVERSE the administrative judge's finding that the appellant made a protected disclosure, and VACATE the administrative judge's clear and convincing evidence analysis as it relates to the appellant's third disclosure. We supplement the administrative judge's analyses of four of the appellant's five remaining disclosures, find that the appellant established that she engaged in protected activity based on the record, and supplement the administrative judge's analyses of contributing factor and, as it relates to the appellant's protected activity, the clear and convincing test.

## BACKGROUND

In June 2021, the agency demoted the appellant based on misconduct from the position of GS-14 Supervisory Human Resources Officer (HRO), chief of the human resources (HR) office at the Central Alabama Veterans Healthcare System (CAVHS), to the position of GS-13 Lead Human Resources Specialist. *Hudson v. Department of Veterans Affairs*, AT-0752-21-0485-I-1, Initial Appeal File (IAF), Tab 7 at 12, 14-16, Tab 8 at 6-11. The charges, which were based on findings of an agency Administrative Investigation Board (AIB), pertained to two series of

incidents. IAF, Tab 7 at 922-30, Tab 8 at 6-8. In the first series of incidents, the appellant was alleged to have instructed several of her subordinates to backdate an employee's promotion without supporting documentation or lawful authority, then disciplined them or used profanity when they refused to comply with her instruction. IAF, Tab 8 at 6-8. In the second series of incidents, the appellant was alleged to have retaliated against her Administrative Officer through various methods—including revocation of telework and an admonishment—for submitting a sick leave request on behalf of a coworker consistent with office practice. *Id.* at 7-8. The appellant appealed her demotion to the Board. IAF, Tab 1. The appellant raised affirmative defenses during her appeal, including alleged retaliation for whistleblowing consisting of six protected disclosures and four protected activities. *Hudson v. Department of Veterans Affairs*, AT-0752-21-0485-I-2, Appeal File (I-2 AF), Tab 34 at 6-9, 14-15, Tab 38 at 2.

After holding a hearing, the administrative judge affirmed the appellant's demotion and denied the appellant's affirmative defenses. I-2 AF, Tab 56, Initial Decision (ID). Regarding the agency's adverse action case, the administrative judge sustained both of the agency's charges, and found that the agency established a nexus between the appellant's conduct and the efficiency of the service and proved the reasonableness of its penalty. ID at 4-14, 35-37.

In denying the appellant's whistleblower reprisal claim, the administrative judge first determined that the appellant established that only one of her disclosures—disclosure three—was protected under 5 U.S.C. § 2302(b)(8), and only in part. ID at 17-24. Next, the administrative judge found, without any analysis, that all four activities the appellant raised were protected under 5 U.S.C. § 2302(b)(9), before proceeding to analyze contributing factor. ID at 24-28. She then found that the appellant established contributing factor through the knowledge/timing test for disclosure three and one of her alleged protected activities—activity three. ID at 26-28. The administrative judge determined that the appellant did not establish contributing factor for her remaining activities

upon crediting the proposing and deciding officials' attested ignorance of those activities. *Id.*

The administrative judge then commenced to analyze the agency's burden under the factors set forth by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). ID at 28-32. For *Carr* factor one, among other considerations, she credited the testimony of the appellant's subordinates to determine that the agency's evidence in support of the appellant's demotion was very strong. ID at 30-31. For *Carr* factor two, the administrative judge found that the deciding official may have had some institutional motive to retaliate stemming from his knowledge of the appellant's whistleblowing activity but that absent proof of any other retaliatory motive, he had minimal motive, if any, to retaliate against the appellant. ID at 31. Finally, the administrative judge found that the agency did not present evidence of similarly situated non-whistleblowers and that *Carr* factor three was thus neutral. ID at 32. Weighing the strength of the agency's evidence against the minimal motive to retaliate, the administrative judge concluded that the agency proved by clear and convincing evidence that it would have demoted the appellant absent her whistleblowing disclosure and activity. *Id.*

The appellant filed a petition for review in which she, among other things, alleges that the administrative judge erroneously denied her a "key witness" and her damages witnesses, "reprimanded" her for attempting to consult with her attorney during the hearing, and credited the testimony of agency witnesses with "performance and misconduct issues" over her testimony despite her lack of such issues. Petition for Review (PFR) File, Tab 1. The agency filed a response. PFR File, Tab 4.

## ANALYSIS

Under the Whistleblower Protection Enhancement Act, to prevail on a prohibited personnel practice affirmative defense in a chapter 75 appeal that

independently could form the basis of a Board appeal, once the agency proves its adverse action case by a preponderance of the evidence, the appellant must demonstrate by preponderant evidence that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the disclosure or activity was a contributing factor in the adverse action. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 5. A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A). A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 14. "Gross mismanagement" is more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 24. A "gross waste of funds" constitutes a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the government. *Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶ 31 (2010). "Abuse of authority" is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affected the rights of any person or that resulted in personal gain or advantage to him or to preferred other persons. *Downing v. Department of Labor*, 98 M.S.P.R. 64, ¶ 12 (2004), *aff'd*, 162 F. App'x 993 (Fed. Cir. 2006).

Whistleblowing activity is a contributing factor in a personnel action if it affects an agency's decision to take a personnel action in any way. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One of the ways to

prove contributing factor is through the knowledge/timing test, in which the appellant may demonstrate that the official taking the personnel action knew of the disclosure and that the personnel action occurred within 1 to 2 years of the disclosure. *Salazar*, 2022 MSPB 42, ¶ 32. The Board has held that, if an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, she shall consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney*, 117 M.S.P.R. 480, ¶ 15.

If the appellant meets her burden, then the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure or activity. *Fisher*, 2023 MSPB 11, ¶ 5. In determining whether an agency has met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323.

The appellant did not establish that she made a protected disclosure.

For disclosure three, the appellant claimed that she emailed the deciding official on July 16, 2020, that required documents, such as a market pay form, had not been submitted to remove an agency physician from his position and that the attempt to lower the physician's "pay tier" violated agency policy. I-2 AF, Tab 16 at 26-27, Tab 34 at 7. The appellant claimed that these actions violated a provision of the agency's Handbook 5007/54 which prohibits reduction of physicians' market pay except in limited circumstances, including a change in assignment. I-2 AF, Tab 34 at 7. The appellant also alleged that she disclosed

that the agency's actions or omissions constituted gross mismanagement and abuse of authority.  *Id.*  The text of the appellant's July 16, 2020 email stated, in relevant part, that a vacancy had been announced for a position already encumbered by a physician, that it was "illegal" to double-encumber the position, and that required documents were never submitted to HR to remove the position's incumbent, including a market pay form required for any reassignment.  I-2 AF, Tab 16 at 26-27.

We agree with the administrative judge that, based on the testimony of witnesses regarding the permissibility of double-encumbering positions and the appellant's testimony that, among other things, she did not literally mean that it was illegal to double-encumber the position, the appellant's assertion of illegality in her July 16, 2020 email did not disclose a violation of law, rule, or regulation, gross mismanagement, or abuse of authority.  ID at 20-22.  The administrative judge found, however, that the appellant had a reasonable belief that the physician had been relocated without a proper market pay form, and thus that the disclosure of the failure to complete a market pay form, which "potentially violates agency policy," was protected.  ID at 21.  We disagree with the administrative judge's finding that this disclosure was protected.

Ordinarily, to make a protected disclosure of a law, rule, or regulation, an employee must identify the specific law, rule, or regulation that was violated, though an individual need not identify a statutory or regulatory provision by a particular title or number when the statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation.  *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 24 (2015) (internal quotations omitted).  The appellant's email and the circumstances surrounding it did not clearly implicate an identifiable violation of law, rule, or regulation.  The appellant framed disclosure three as an assertion that the agency's failure to submit certain forms and attempt to lower the physician's pay tier violated agency policy prohibiting reduction of physicians' market pay except

in limited circumstances.  I-2 AF, Tab 16 at 7.  But nowhere in the July 16, 2020 email did the appellant assert that the physician's market pay was being reduced.  I-2 AF, Tab 16 at 26-27.  Because the email contained no assertion of a violation of the identified policy, we find that the appellant did not establish that she reasonably believed her email disclosed a violation of an identified law, rule, or regulation.  We also find that the appellant's email did not otherwise evidence gross mismanagement or abuse of authority.

We supplement the remainder of the administrative judge's analysis of the appellant's disclosures as follows.  For disclosure one, the appellant claimed that she informed CAVHS managers of violations of agency policy in an incident in which the HR office extended a job offer before receiving documentation related to the selection.  I-2 AF, Tab 34 at 7, Tab 53, Hearing Recording (HR) Day 4 (testimony of the appellant).  The administrative judge found disclosure one not protected on the grounds that the appellant did not identify the allegedly violated policy with any particularity.[2]  ID at 18-19.  The appellant did, however, claim during the appeal that the disclosure evidenced violations of two sections of Handbook 5005 she identified.  I-2 AF, Tab 34 at 7.

In any event, the administrative judge's failure to address those sections did not prejudice the appellant.  One of those sections pertains to retention of records of job announcements and does not require that an HR office receive such records before making a job offer.  I-2 AF, Tab 36 at 100-01.  The appellant's June 3, 2019 memorandum, which she asserts was part of disclosure one, I-2 AF, Tab 34 at 7, shows that the HR office eventually received records of the selection at issue, including the scoring sheets, and we see nothing that amounts to what a disinterested observer could reasonably conclude evidenced a violation of the

---

[2] In assessing whether the appellant's disclosures—many of which related to agency or Government-wide HR policies and procedures—were protected, we are mindful that, due to her position, the appellant possessed extensive expertise in the area.  *See Smith*, 2022 MSPB 4, ¶ 14 (stating that an appellant must show that a reasonable person in her position would believe that the matter disclosed evidenced one of the situations specified in 5 U.S.C. § 2302(b)(8)).

policy identified by the appellant. I-2 AF, Tab 16 at 13-14. We also fail to discern from the other section of Handbook 5005 referenced by the appellant—which pertains to actions taken after a selection is discovered to have been improper—that she reasonably believed her disclosure evidenced any violation thereof. I-2 AF, Tab 36 at 96.

Regarding disclosure two, the appellant claimed to have disclosed to her supervisor that the supervisor previously told her not to hire a certain employee as her assistant chief because of a reference the employee had given the supervisor that turned out to be inaccurate. I-2 AF, Tab 34 at 7. The administrative judge analyzed disclosure two as asserting violations of 5 U.S.C. § 2302(b)(1) and (b)(2), when the appellant framed disclosure two as evidencing violations of 5 U.S.C. § 2302(b)(12) and 5 U.S.C. § 2301(b)(1) and (b)(8). ID at 19-20; I-2 AF, Tab 34 at 7, Tab 38 at 2. Section 2302(b)(12) of Title 5, U.S. Code prohibits, in relevant part, the taking of a personnel action that violates any law, rule, or regulation implementing, or directly concerning, the merit systems principles set forth in 5 U.S.C. § 2301. Meanwhile, subsection (b)(1) of 5 U.S.C. § 2301 states, in relevant part, that "selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity," while subsection (b)(8) states, in relevant part, that employees should be protected against arbitrary action.

The administrative judge's error, however, did not prejudice the appellant. The appellant testified that the supervisor had also told her that the candidate who gave the inaccurate reference was not honest about his issues with the employee, having known that the employee was a poor performer. HR Day 4 (testimony of the appellant). We find that, to the extent the appellant disclosed to her supervisor that the supervisor's comments led to the candidate's nonselection, the appellant was aware that the supervisor's concerns related to the candidate's integrity or his ability to assess performance, both of which are appropriate

considerations under 5 U.S.C. § 2301(b)(1) and unarbitrary bases for a nonselection. The evidence thus indicates that the appellant did not reasonably believe disclosure two evidenced a violation of 5 U.S.C. § 2302(b)(12), 5 U.S.C. § 2301(b)(1), or 5 U.S.C. § 2301(b)(8).

Regarding disclosure five,[3] the appellant alleged that her March 9, 2021 disclosure to her supervisor that she was doing no "meaningful" work while she was detailed after the AIB into her misconduct evidenced gross mismanagement, gross waste of funds, abuse of authority, and a violation of law, rule, or regulation. I-2 AF, Tab 26 at 138, Tab 34 at 8. We agree with the administrative judge that the appellant's disclosure did not evidence any such wrongdoing.[4] ID at 23. We add, however, that, contrary to the administrative judge's determination that the appellant did not reference a violation of a specific policy, the appellant claimed that her disclosure evidenced a violation of the section of Handbook 5005 regarding details. *Id.*; I-2 AF, Tab 34 at 8. In any event, as we found in discussing disclosures one and two, the administrative judge's failure to address the section the appellant identified did not prejudice the appellant, as the relevant section on details in Handbook 5005 does not contain any provision relating to duties of employees on details. I-2 AF, Tab 36 at 1488-90.

Regarding disclosure six, the appellant claimed that she disclosed retaliatory acts by CAVHS management officials to the deciding official in an April 29, 2021 email. I-2 AF, Tab 26 at 140, Tab 34 at 8, Tab 38 at 2. The

---

[3] We agree with the administrative judge's determination that, for the reasons set forth in the initial decision, disclosure four was not protected. ID at 22-23.

[4] When asked during the appeal to clarify disclosure five regarding not being assigned "meaningful" duties, the appellant explained that the disclosure evidenced gross mismanagement, a gross waste of funds, and abuse of authority because she was "a high-level management official being paid her salary and not doing any work within her PD." I-2 AF, Tab 16 at 8. Because it should not have been surprising to an experienced HR professional, such as the appellant, that she would not perform work within her position description while detailed away from her position, we find that the appellant did not reasonably believe her disclosure evidenced any of the categories of wrongdoing set forth in 5 U.S.C. § 2302(b)(8).

appellant claimed that, in addition to abuse of authority—which the administrative judge appropriately addressed—her disclosures evidenced violations of the agency's whistleblower protection policy. ID at 24; I-2 AF, Tab 34 at 8. Although the appellant did not identify which provision of the agency's whistleblower protection policy she claimed was violated, Directive 0500 defines whistleblower retaliation as "a supervisor taking or failing to take, threatening to take or not to take, a personnel action because of a whistleblower disclosure," relying on the definition of "personnel action" in 5 U.S.C. § 2302(a)(2)(A).[5]  VA Directive 0500, Office of Accountability and Whistleblower Protection:  Investigation of Whistleblower Disclosures and Allegations Involving Senior Leaders or Whistleblower Retaliation, § 2.f, m (2019), https://www.va.gov/vapubs/viewPublication.asp?Pub_ID=1062&FType=2.

Because the managers' allegedly retaliatory acts asserted in the April 29, 2021 email—including providing information to the AIB about her misconduct, yelling at her, and telling her to destroy certain records—do not constitute personnel actions under 5 U.S.C. § 2302(a)(2)(A), we find that the email was not a disclosure which evidenced a violation of an identified law, rule, or regulation.

In sum, we agree with the administrative judge's determinations, as supplemented, that disclosures one, two, five, and six were not protected. We also agree, for the reasons set forth in the initial decision, that disclosure four was not protected. Finally, regarding disclosure three, we reverse the initial decision and find it not protected. Thus, the appellant did not make a protected disclosure. Because we find that disclosure three was not protected, it was unnecessary for the administrative judge to consider whether the agency established by clear and convincing evidence that it would have taken the same personnel actions in the absence of disclosure three. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (stating that the Board may not proceed to the

---

[5] Although the document is not in the record, it is publicly available on the internet, and the Board may take official notice of publicly available documents. *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 19 n.3 (2016).

clear and convincing stage of the whistleblower protection analytical framework unless it has first determined that the appellant established her prima facie case of whistleblower reprisal), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015). Accordingly, we vacate the administrative judge's analyses of the clear and convincing test as it relates to disclosure three.

The appellant established that she engaged in a protected activity which was a contributing factor in her demotion.

As noted previously, the appellant also raised four whistleblowing activities as part of her whistleblower reprisal affirmative defense. I-2 AF, Tab 34 at 8-9. Specifically, she alleged that she cooperated with an AIB regarding CAVHS leadership by providing testimony about policy violations and provided documents and statements to the Office of Special Counsel (OSC) in support of various investigations it conducted into CAVHS incidents. *Id.* According to the appellant, these activities were protected under 5 U.S.C. § 2302(b)(9)(A)(i), (B), and (C). *Id.* While the administrative judge did not analyze whether these activities were protected, assuming that the appellant established that she engaged in those activities and that they were protected under 5 U.S.C. § 2302(b)(9), we find that the administrative judge correctly found contributing factor satisfied through the knowledge/timing test for only activity three based on, among other things, the testimony of the proposing and deciding officials regarding their knowledge or ignorance of the appellant's activities. ID at 26-28. Because the administrative judge did not, however, consider other evidence relevant to contributing factor for the remaining three activities, we do so here. As discussed, in considering evidence other than the knowledge/timing test for determining contributing factor, the Board examines evidence such as the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney*, 117 M.S.P.R. 480, ¶ 15.

First, the agency's reasons for demoting the appellant were very strong. The gravamen of the appellant's misconduct was a series of incidents in which she instructed several of her subordinates to improperly backdate an employee's promotion and retaliated against them for refusing to do so. IAF, Tab 8 at 6-8. The deciding official testified that the appellant was supposed to know HR rules as the subject matter expert at CAVHS, that she had lost the trust of her subordinate staff, management, and the HR office at the agency's regional headquarters, and that she could no longer be effective in her job. I-2 AF, Tab 47, HR Day 3 (testimony of the deciding official). The appellant offers no basis to doubt this testimony, nor do we discern any.

Second, none of the appellant's activities were personally directed at the proposing or deciding officials. Third, we fail to discern that the appellant's activities created a motive to retaliate in the proposing or deciding officials. The appellant testified that she provided testimony to an AIB regarding bullying and hostile work environment allegations regarding the CAVHS Deputy Medical Center Director for activity one, without discussing the details of that testimony; that she cooperated with an interview by the agency's Office of Medical Inspections for activity two, without explaining what that cooperation entailed; and that she did not describe her alleged cooperation with the OSC for activity four in a manner that distinguished that activity from her other whistleblowing activity. HR Day 4 (testimony of the appellant). The appellant's descriptions of the content of her activities do not warrant inferring anything more than minimal retaliatory motive, if any. Further, multiple agency witnesses, including the proposing and deciding officials, testified that HR officials routinely cooperated with AIBs or OSC investigations as part of their duties. HR Day 2 (testimony of the Supervisory HR Specialist, testimony of the proposing official); HR Day 3 (testimony of the regional headquarters Associate HRO, testimony of the deciding official). An HR professional explained that HR professionals provided requested documents or testimony to AIBs or OSC as part of such routine cooperation. HR

Day 3 (testimony of the regional headquarters Associate HRO). With the possible exception of portions of activity one, there is no indication that the appellant's activities fell outside such routine assistance.[6] We thus find that the appellant's activities would not have created anything more than minimal retaliatory desire or motive, if any, within the proposing or deciding officials.

In light of this analysis, we find that the appellant did not establish contributing factor for activities one, two, or four. The administrative judge's failure to consider the ways other than the knowledge/timing test to establish contributing factor thus did not prejudice the appellant, affording no basis to reverse the initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984). Regarding activity three, based on evidence indicating that the appellant spoke with an OSC investigator and provided information to OSC on June 2, 2020, the date she claimed to have engaged in the activity, we find the activity protected under 5 U.S.C. § 2302(b)(9)(C). HR Day 2 (testimony of the appellant); I-2 AF, Tab 28 at 684-87, Tab 34 at 9, Tab 49 at 52; see *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62 (clarifying that under 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to OSC is protected regardless of content). Thus, having found that the appellant established a prima facie case of whistleblower reprisal for activity three, we now consider whether the agency established by clear and convincing evidence that it would have taken the demotion action in the absence of that activity.

The agency proved by clear and convincing evidence that it would have demoted the appellant in the absence of her protected activity.

Again, in determining whether an agency has met its burden of proving that it would have taken the contested action in the absence of protected activity, the Board will consider the following factors: (1) the strength of the agency's

---

[6] Title 5, U.S. Code, section 2302(f)(2), which imposes an extra burden for proving that disclosures made in the normal course of duties of certain employees are protected, is not applicable to activities under 5 U.S.C. § 2302(b)(9). *Salazar*, 2022 MSPB 42, ¶¶ 10-14. Thus, that provision has no relevance to this appeal.

evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323. The analysis of motive to retaliate under *Carr* factor two requires accounting for any institutional motive to retaliate relevant agency officials may have had. The Federal Circuit stated in *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012) that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees." In *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019), the Federal Circuit explained that such a "professional retaliatory motive" could exist when whistleblowing activity "implicated the capabilities, performance, and veracity of [agency] managers and employees . . . ." The Board thus held that the fact that disclosures reflected poorly on Government officials as representatives of the "general institutional interests" of their agency was sufficient to establish retaliatory motive. *Smith*, 2022 MSPB 4, ¶ 29.

Turning to the instant appeal, we find, for reasons discussed earlier, that the agency's evidence in support of its action was very strong for *Carr* factor one. Regarding *Carr* factor two, we find that the proposing and deciding officials had minimal, if any, motive to retaliate against the appellant for activity three. There is no indication that any assistance the appellant provided to OSC on June 2, 2020, in the physician's whistleblower reprisal complaint implicated the proposing or deciding officials personally. Further, regarding professional retaliatory motive, the proposing official had not yet begun her tenure as the regional headquarters chief of HR as of June 2, 2020, while the deciding official began his tenure at the regional headquarters that same month, and there is no

indication that the appellant's cooperation with OSC otherwise reflected directly on their performance as managers. HR Day 2 (testimony of the proposing official); HR Day 3 (testimony of the deciding official). In addition, the record shows that the appellant participated in the OSC investigation as part of her routine, official HR duties. HR Day 2 (testimony of the Supervisory HR Specialist, testimony of the proposing official); HR Day 3 (testimony of the regional headquarters Associate HRO, testimony of the deciding official); HR Day 4 (testimony of the appellant); I-2 AF, Tab 28 at 684-87. Lastly on the issue of motive, there is no evidence that the appellant's protected activity reflected so poorly on the agency or agency employees as to justify an inference of more than minimal retaliatory motive, if any at all.

Next, we agree with the administrative judge that, because the agency did not present evidence of similarly situated non-whistleblowers, *Carr* factor three is neutral.[7] ID at 32; *see Whitmore*, 680 F.3d at 1374 (stating that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis"). Ultimately, we agree with the administrative judge's conclusion that, weighing the strength of the agency's evidence against the minimal motive to retaliate, the evidence clearly and convincingly showed that the agency would

---

[7] Even if we were to find that the absence of evidence regarding *Carr* factor three cut slightly against the agency, based on our analysis of the other *Carr* factors, we would find that the agency met its burden on the clear and convincing test.

have demoted the appellant even in the absence of her protected activity.[8]  ID at 32.

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule

---

[8] On review, the appellant claims that the administrative judge "reprimanded" her for speaking to the administrative judge during the hearing in an attempt to consult with her attorney.  PFR File, Tab 1 at 3. In one instance during the hearing, the appellant interrupted a discussion between the administrative judge and the parties' representatives, and the administrative judge told the appellant that her representative was supposed to speak on her behalf.  HR Day 2 (discussion between the parties and the administrative judge).  But when the appellant then requested permission to speak to her representative, the administrative judge permitted her to do so without hesitation. *Id.* We fail to discern any error in the administrative judge's response.  Next, despite the appellant's claims on review, PFR File, Tab 1 at 3, we find that the administrative judge appropriately addressed the appellant's witness requests below, I-2 AF, Tab 34 at 17-18, Tab 38 at 2-3, and that the appellant provides no sufficiently sound reason for overturning the administrative judge's credibility determinations, *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002), to credit the testimony of the witnesses the appellant challenges over that of the appellant, ID at 9-11, and we identify no material issue with her analysis.  Finally, the appellant submits on review an agency email with the same date as her petition for review designating her as an interim acting supervisor.  PFR File, Tab 1 at 4. Even if the exhibit could theoretically undermine the deciding official's reason for demoting the appellant from her supervisory position, the email is dated over 16 months after the appellant's demotion, and the official sending the email notes that she does not anticipate the detail being a long one. *Id.* Further, as a Lead HR Specialist, it is not surprising or inappropriate for the appellant to act as a supervisor for a brief period.  We thus fail to see any special import in the exhibit to the issues in the appeal.

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
P.O. Box 77960<br>
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
131 M Street, N.E.<br>
Suite 5SW12G<br>
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD:        _____
                      Gina K. Grippando
                      Clerk of the Board

Washington, D.C.